The United States v. Thomas is next for argument. Mr. Hasid May it please the Court, good morning, Your Honors. As you said, Alex Hasid for Defendant Appellant Michael Thomas. Stripped to its essence, we think this case presents a pretty straightforward Fourth Amendment violation. Law enforcement searched Mr. Thomas' rented home, admittedly that he rented with a fake name, but it did so without a warrant and without consent of anyone authorized to give it. The District Court committed reversible error in denying Mr. Thomas' motion to suppress evidence secured and obtained through that warrantless search. And it did so on one ground, but that has two prongs. The first, because Mr. Thomas used a fictitious identity to rent the home. And second, that use defrauded the landlord. We would submit to the Court that the District Court got it wrong on both points, and the government's effort to have the District Court affirmed is wrong for many of the same reasons. And that's both legally and factually. First, Mr. Thomas didn't lack, he had a reasonably objective or I should say an objectively reasonable expectation of privacy in his rented home. He had that, he was a valid lessee, just like... That's part of the question though. The District Court concluded that Thomas had violated state law in obtaining that interest. And isn't it hard to have a legitimate expectation in something that you obtained by violating state law? Your Honor, I think there are a couple of problems with that approach. The first is that state laws across the country are in many ways disparate. So to have a... The only state whose law matters here is Georgia. Right, but would we say that a citizen of Georgia versus a citizen of Illinois has different rights under the Fourth Amendment? I think we wouldn't say that. I think everyone must have equal protection under the Fourth Amendment. You have a right under the Fourth Amendment to those things in which you have a legitimate expectation and that may differ by state. Look, it's just a fact. We have states and they have different rules. So I wish you'd address my question rather than seek out ways to evade it. Repeat your question for me one more time so that I can try again. The District Court said your client may have had a subjective expectation of privacy, but it is not one that society is prepared to recognize as legitimate because he obtained the leasehold only by violating state law. The violation of the state law is separate, and I believe this does answer your question. The violation of the state law is separate from Mr. Thomas's reasonable expectation of privacy. It is... Look, listen to my question. The District Court said that he had a subjective expectation of privacy, but it is not one society is prepared to recognize as legitimate because it was obtained by violation of state law. You can't deal with that by stressing that he had a subjective expectation. So I wish, without repeating myself again, that you would deal with my question. The government concedes that there is an objectively reasonable expectation in that scenario where it admits in its brief that an abused spouse under similar circumstances would have an objection, and it can't be that the abused spouse... Because we're then looking at the conduct... Look, I wish you would deal with my question. The message you're sending is, ask away, I'm going to say anything I want, but it won't have anything to do with your question. It's not a message any appellate advocate should send to the court. This is the central question in your case. If you're not willing to address it, we can cut this argument short. I'm more than willing to address it. I think... Then please do. I think I'm not understanding your question because I think I'm missing a key... I am restating the district court's opinion. I thought your point was that the line can't just be a violation of state law given the government's concession that under some circumstances, this would be an objectively reasonable expectation, right? Yes. I thought that I was... Legitimate expectations and defensible reasons that I think we could all understand involving domestic violence or, for that matter, celebrities who may use false names or judges who might purchase property in false names for security reasons, okay? And so that the technical reason, the technical violation of Georgia law that may or may not have occurred here, that's a separate question, doesn't control. But we're in... The cases don't give us a whole lot of guidance here in drawing this line because would you concede there are any circumstances in which, for example, somebody who had obtained by intentional fraud control over the premises does not have an objectively reasonable expectation of privacy, just as if they had broken into the abandoned cabin? I would certainly concede that someone who did it through intentional fraud would have no legitimate expectation of privacy, and I don't think... That's the problem because this is the subtext in the district court's opinion. The district court says your client is a fugitive from justice. He's wanted on a warrant. He uses a false name because he's a fugitive in order to avoid his apprehension on the existing warrant. Why is that any different from Judge Hamilton's hypothetical? Your Honor's question, in that question, Mr. Thomas may be hiding from law enforcement, but the government's argument and the district court's argument and Judge Hamilton's point is who the target of the supposed intentional fraud is. So putting aside that there is a lack of evidence in the appellate record that any intentional fraud was committed here, Mr. Thomas may be hiding from law enforcement, but that's not the same thing as intentionally defrauding the landlord. He didn't steal from the landlord. He didn't use a stolen identity belonging to another person or a deceased person. He hasn't... And if we look at it... That's actually not so clear to me. There are a lot of people who, a lot of landlords, who would refuse to rent to fugitives from justice, no matter how far in advance they paid, because they don't want their premises used for ongoing crimes. To suppose that the only thing in a landlord's calculus is, have I been paid, is, I think, misunderstands how people decide how to rent their properties. I don't intend to suppose that, and I don't think our argument intended to suppose that. The point we intended to make is that the evidentiary record below was not developed, and so it's not clear that the landlord actually cared. For instance, if the landlord signed the lease, there's... Oh, look, let's avoid that. There's a subsidiary debate about who is responsible for the record not being developed, right? If the prosecutor's brief blames you, and you blame the prosecutor, I would rather focus on trying to see if we can get the law right, and then we will see what facts to apply. In that regard, the... I would submit, Your Honor, based on the district court's finding and the government's argument, it is difficult to divorce the facts in this scenario. I think the case law in this circuit and in others does acknowledge that the use of a fictitious name under certain circumstances would not eliminate an objectively reasonable expectation of privacy. That's why... Look, there's an old common law rule that anybody can use any alias he wants, any time, except for an unlawful purpose. So there was no problem when Samuel Clemens published books under the name Mark Twain, even if he wanted the royalty checks written out to Mark Twain, and he signed Mark Twain's name. But the common law exception has always been that if you use the alias or the other name for an unlawful purpose, and I'm adding here for escaping apprehension on a warrant, for fleeing from justice, your opportunity to use the alias is curtailed. Right? So I don't think we can answer the Fourth Amendment question by saying Samuel Clemens could have rented an apartment in the name of Mark Twain, or Judge Hamilton could rent an apartment in my name so that whoever is looking for him will come for me instead. Right? We have to assume, I think, that the name is being used for an unlawful purpose, and then we have to figure out the consequences of that. They're not altogether clear, but we have to address it in those terms, I think. Counsel, isn't, along those lines, just kind of thinking through the, particularly the Judge Hamilton, Judge Easterbrook example, which I find fascinating, but isn't... We're both going to use your names. Right, exactly. I know. Isn't the focusing on the expectation of privacy of the individual, right? So if I rent an apartment, and I rent it under Flood Flintstone, I can be pretty confident that I'm the only one that has access to that apartment. Right? No imaginary Flood Flintstone is going to come, presumably come by, and tell the landlord, look, I'm Flood Flintstone, give me the keys to the apartment. We certainly hope that's the case. On the other hand, if I rent the apartment as David Hamilton, and Judge Hamilton then shows up and says, I want access to the apartment, then presumably the landlord would give him access to the apartment, because it's his, so to speak, right? Right. So isn't, to me, the difference seems to be between fictitious aliases and stolen identity, less about the impact that the stolen identity might have on the victim, because I don't think that's really part of the Fourth Amendment analysis. It's really what can the holder of the right anticipate, reasonably anticipate, based upon that usage. And it seems to me that the Supreme Court, one of the focuses, focuses on whether or not a person has the right to exclude, right? And perhaps if I rent an apartment under Judge Hamilton's name, I don't have the right to exclude him. And so that expectation is diminished. I think that's exactly right. I think those are the facts of, if my memory serves, the Johnson case, where someone rents a storage unit using someone else's name, and one of the considerations the court says is, hey, that real person could have come and said, I want into your storage unit. No one was coming to Mr. Thomas' home. He was Friesen Duane Alredious, and Friesen Duane Alredious was him. And so that's why I think the government has focused. And again, part of this is the factual issue of whether the landlord was defrauded. That would bring it more in line with the precedent the government and the district court relied on, like Cayman. Someone was harmed. Someone else was harmed. Not law enforcement, per se, because law enforcement here is really, that's the stand-in for the landlord. Mr. Hanson, I guess, to what extent is this a question that we ought to be deciding after the fact? I mean, I understood your position to be, look, the police had plenty of time to get a warrant here. They had ample grounds to get a warrant. I can't imagine a judge looking at these facts and not granting a warrant to search this apartment, given the information that had been gathered, regardless of when the fake IDs were found. But that we don't want police, in essence, deciding to grant themselves self-help in these cases by doing searches without warrants. Instead, go to a judge. That's exactly right. It is an after-the-fact attempt at justifying something that could have very easily been avoided by the government. Not to necessarily say that they would have had cause to get a warrant, but certainly, they did. You may not want to concede that, but I think it's pretty evident. So I understand your position, sir. I had intended to save a lot more time for rebuttal. I can sit now, unless the panel has other questions.  Certainly. Yes, sir. Mr. Miller, let me ask you the question in a different way, the same kind of question I was asking Mr. Hasid. The way I want to ask it to you is, one day, Thomas is peaceably enjoying his apartment. The landlord shows up and says, you don't have legal authority to be here. I am coming in. You can't stop me. And I'm throwing all your furniture out on the street immediately, where it will be stolen or get spoiled in the rain. Can the landlord do that? Your Honor, I think the issue with that hypothetical is that we're conflating civil landlord-tenant law with Fourth Amendment analysis in a criminal case. You've been here all morning. Why don't you answer the question? Yes, Your Honor. I suppose the answer would be, there would be there's nothing physically stopping the landlord from doing that. No, there's nothing physically stopping the landlord from picking up a gun and shooting Turner as he stands. I'm asking whether he could do it consistent with Georgia law. Likely. And I hope you see why the answer matters. Because if the answer is he can't do it consistent with Georgia law, that is saying that the subjective expectation of privacy appears to be one that society is prepared to recognize as reasonable. One can doubt the wisdom of the Katz two-step, that Katz tells us to ask these two questions. There's a certain circularity about them, but they are the Supreme Court's questions. So I'm trying to figure out, is society prepared to recognize it by asking this very simple question. Can the landlord come and throw Turner and all of his belongings out on the street summarily with no notice? Can he do it? Likely no, Your Honor, because- Likely no. Georgia would say something like, this lease is voidable, but it is not void. Right, good old common law language. But it sounds, then, like this is something society is prepared to recognize as reasonable, at least to some extent, right? Respectfully, I disagree, Your Honor. Because in the hypothetical, again, we're looking at landlord-tenant law, we're looking at the lease. So in the event the landlord does that, the- Well, no one other than the landlord's gonna have a greater right to do this. So I gave you the example of the person with the greatest right. Again, Your Honor, so in that hypothetical, the tenant might take the landlord to small claims court, landlord-tenant court, and the judge in that case would look at, Georgia law would look at the contract. But I think in this court, we're looking at something different. We're looking at reasonable expectations of privacy under the Fourth Amendment. So in this case, what we can focus on is that Mr. Thomas only obtained his interest in this property by breaking the law. So the only way that he was able to get the keys is by using his counterfeit- How do we know that? Go ahead. So I was gonna ask, how do we know that that's the only way to get it? For all we know, if he had shown up, said my name is so-and-so Thomas, here's 12 months payment in advance, he has absolutely no trouble getting a lease. When you say the only way he got in is to say you're perfectly confident that if he had applied in his own name, the landlord would have said no. What in the record makes us confident of that? So unfortunately, the factual record here is not- The answer is nothing in the record makes us confident of that. So I guess the answer would be there is information that was provided in discovery that would provide- Well, the landlord doesn't have information provided in discovery. Judge Hamilton might have asked this question in a different way. So if he wanted to do it differently, okay. What we would point the court to is at several points in the government's brief below, we specifically alleged that Mr. Thomas used his counterfeit identification documents through the application process. We also alleged that he did that because, the obvious, he was a fugitive. He was- Yeah, he's a fugitive from justice. But that doesn't answer the question whether if he'd applied in his own name, the landlord would have said, money talks, here's a nice unit for you. Understandable, Your Honor. But I do believe it is a logical, reasonable inference that in most cases- It's a guess. The burden's on you to prove grounds for a warrantless entry, right? That's correct, Your Honor. Okay, and you did not prove a violation of Georgia law here. But as Judge Easterbrook says, we need to think about where we're headed in this. Let me go back to the Judge Easterbrook's hypothetical of the landlord just coming in and kicking him out and throwing his furniture and electronics out on the street. I take it, the big problem, I'm guessing about Georgia law here, but in most cases, the big problem there is the self-help, right? Correct, Your Honor. There are legal remedies and processes for eviction. And even if we agree that the landlord might ultimately win that eviction process, he can't use self-help. That's a matter of keeping the peace, right? Agreed, Your Honor. Okay. So, one of the things, I guess, that troubles me about the arguments you're making in your brief here is that this has a kind of post-hoc justification here in light of, to permit the police to engage in self-help. We're gonna take our chances. We're gonna go in and search without a warrant instead of going to get a warrant, which virtually all of Fourth Amendment law is aimed at promoting, especially with a home, right? Correct, Your Honor. So, I don't think there's any dispute here that law enforcement could and should have obtained a warrant. But now we're looking at the facts as they are. Law enforcement searched without a warrant. So, when Mr. Thomas moved to suppress that evidence, the government's argument in rebuttal was that he did not have a reasonable expectation of privacy. It sounds to me like what you're advocating here is a new exception to the warrant requirement. Respectfully, Your Honor, we disagree. Well, that we have, you got a warrant or you got exigent circumstances or you think the person got access to the residence illegally. So, Your Honor, what the Supreme Court precedent shows us is that if there is not a reasonable expectation of privacy, there is no search within the meaning of the Fourth Amendment. So, if Mr. Thomas cannot demonstrate that expectation of privacy, there was no search to begin with. Look, the district court found that he had a subjective expectation of privacy, right? You may not like that, but that's what the district court said. District court said society isn't prepared to recognize it as reasonable. I don't think you can ask us to affirm by disagreeing with the district court's finding that there was in fact a subjective expectation. Your Honor, and indeed the government below conceded that Mr. Thomas had a subjective expectation of privacy. So, let me try a different angle here. You're probably pretty familiar with money laundering law. Yes, Your Honor. And as I understand the law, it would be a violation of federal money laundering law to take proceeds from drug trafficking to buy or rent a residence. As long as we could prove that the intent was to conceal. You can trace it. Yes, Your Honor. Okay. Suppose you, the DEA team follows a suspected dealer and finds his residence that he's just purchased or rented a few weeks before. And you think it's highly likely that it was with proceeds from drug money. You need a warrant? So, I think there are two ways to answer that question. One legally and one practically. So, practically every law enforcement officer, every prosecutor is going to say get a warrant because that's the safest way to proceed. But your brief takes the position you don't have to. So, subject in essence to being able to prove after the fact that you had legal grounds to that it was obtained with proceeds of drug money. Well, I think what we're arguing here is that when a criminal violation is committed in the process of acquiring an interest in property, that criminal violation can inform the Fourth Amendment analysis. I don't know what inform means. We've got a binary problem here, I think. I could be wrong, but I think we have to say yes or no. Well, so unfortunately what the Supreme Court says in all of its jurisprudence on reasonable expectation of privacy is that there is no one set test. There's not a list of factors. It's a squishy concept. Well, you're telling us if you can find a violation of law in the acquisition of the interest in the property, there's no need to get a warrant. In an after the fact analysis, it would likely be that the individual had a diminished or perhaps no expectation of privacy. Well, what does diminished mean? So again, I don't think it's simply the fact that a criminal violation automatically equals no expectation of privacy. I think there's more that goes into the analysis. What else? Well, so for example, I think we would have to inquire whether there was a version of the events where the individual could have acquired the property without the criminal violation. Let me explain what I mean by that. So in this case at bar, Mr. Thomas acquires the property unlawfully using the counterfeit ID cards. Our position has always been that there's no version of that story where he acquires the property using his real name. So the only way he would have ever gotten that apartment. Think about all the cases in which car rentals, cars have been rented to people without valid licenses or in fake names, et cetera, et cetera. That doesn't necessarily control there. And here we're talking about a home. That's correct, Your Honor. But again, our position has always been this. And at no point does Mr. Thomas refute these facts or assertions. And that's part of our waiver. Well, part of the problem though is there seems to be some factual confusion about even where and when the ID cards were found, right? There's a dispute about that in the appellate level, but below there was no dispute about that. The only evidence we saw in the record is, is it Simpson's report saying they were found after the search? That's correct, Your Honor. That's correct. So not a basis for doing the search. Correct, Your Honor. And you're telling us outside the record, you think you've got some evidence to dispute that? Correct, so there are reports provided in discovery that basically provide two different scenarios, how the cards were found. At the suppression stage, the government sought to resolve that dispute. We proffered a summary of the facts. Mr. Thomas did not dispute that. He said he agreed with some of them. It's usually thought that Fourth Amendment is entirely objective. And the answer to a Fourth Amendment question depends on what the officers knew at the time. Your argument here is that there are a whole bunch of things not known at the time that matter. Things like what representations were made to the landlord? What identity cards were shown? What would the landlord's response have been had a different identity card been shown? Doesn't that violate the normal principle that the validity of a search depends on what's known at the time of the search? Well, Your Honor, let's clarify what we knew at the time of the search. The officers had the identification cards. Maybe, maybe not. That's disputed. And he might or might not have shown it to the landlord at some earlier time. Again, Your Honor, we proffered these facts below. Mr. Thomas did not dispute them at any stage. And specifically with regard to where the cards were found. You proffered them by asserting them in your brief, right? Correct, Your Honor. Without actually offering evidence. And the only evidence in the record disputes some of them. Correct, Your Honor. But simply proffering- This is a mess, okay. To the extent the court has concerns about the lack of factual development, Mr. Thomas is to blame for that. At any point, he could have pointed to a specific fact and said, I disagree. It is your responsibility to justify a warrantless entry, correct? That's correct. But also, Mr. Thomas has the affirmative burden to demonstrate that he has a reasonable expectation of privacy in the place search. That is his burden. He never attempted to satisfy that. He's got a lease. Correct, Your Honor. But the case law states that he has the burden of establishing that. Well, let me ask you, Mr. Miller. What is your best case from any circuit to justify this warrantless entry? I don't know that I have a good answer for that, Your Honor. We've got our Pitts case about false names on packages. We've got the Eighth Circuit's case on a residence in a false name suppressing evidence in those cases, I guess. What's your best shot? If I had to pick a circuit case, because again, we would direct the court to Byrd, but if we have to do a circuit case, I think it would be Kamen from the Ninth Circuit Court of Appeals. Oh, dear. And my recollection from Kamen is essentially the Ninth Circuit does a similar analysis to what the Supreme Court does in Byrd and says it is well-established that someone who steals property, a thief, has no expectation of privacy in it. And there's really no good reason to distinguish between someone who steals property and someone who takes it by fraud, or to use the language. Or just using a false name. Or uses a car when he's not on the rental agreement. Much of your argument implies that Byrd should have come out the other way. And of course, the Solicitor General argued that Byrd should come out the other way, but lost. So, but in Byrd, the Supreme Court carved out an exception to the general rule and directed the lower courts to consider that on remand. And if this court takes up that invitation and fleshes out that exception, that is a basis to affirm you. What the Supreme Court says in Byrd is that if someone obtains property through subterfuge, if there's a calculated plan to deceive someone, and that's the way they obtain their interest in property, then there's likely no good reason to distinguish that person from a up-and-up thief. And so in this case, that is precisely what Mr. Thomas did. He only obtained his interest in this lease by deceiving the landlord. He had his counterfeit identification cards. That's a factual assertion. And as we pointed out, there's no support for it in the record. Respectfully, Your Honor. The record does not show that had Thomas presented a driver's license with his own accurate picture and name on it, the landlord would have refused to rent to him. You might argue that that's what the landlord would have done, but the record doesn't show that. Correct, Your Honor. That fact was never specifically alleged, but we would argue that that is a reasonable and logical interpretation, just given basic common understandings of the way that individuals apply for leases and acquire interest in property. What do we know about what this particular landlord did? Did he run a warrant check on people who applied for leases? We do know. It's not in the appellate record, but we do know from the discovery that this landlord did run a background check. And so it is a logical inference that- Okay, if the landlord had, say, asked Experian for Thomas's credit rating at the time, what would Experian have said at the time? I'm not aware, Your Honor. I mean, that's the kind of thing that landlords often do, but many criminals pay their debts. They're current on their credit cards. You see the problem, I hope. Correct, Your Honor, but here the landlord was requesting, and made Thomas go through a background check. That background check would have revealed that he had active warrants out of Indiana, and that he had criminal convictions. How do we know? How do we know what, Your Honor? Well, this landlord applies, does a background check. What service does the landlord use? That I don't know, Your Honor, but it is certainly reasonable- If you name the service the landlord used, you could go back and find what that service would have told the landlord had Thomas used his own name, but that's not in the record either. That's correct, Your Honor. Okay, if I can go back to the original hypothetical  it's captured my imagination here. Yes, Your Honor. And let's suppose landlord has done whatever due diligence he wanted to do, rented the apartment, and later gets information that indicates to him that Thomas was lying when he originally got the lease. Does that give him justification to go in and throw Thomas out with self-help? So again, I think that we're conflating landlord-tenant law with reasonable expectation of privacy. They have a lot to do with each other on this. So if the landlord took that action in your hypothetical, likely Mr. Thomas could have filed a suit in Georgia State Court, and the court would have looked at the terms of the lease, would have looked at Georgia State law. At least in Indiana. I mean, even if the landlord would have won an eviction case, he could still be held liable, probably for criminal trespass, and certainly for civil wrongs in doing that. Agreed, Your Honor. Okay, thanks. If there's nothing further, Your Honor, I will. I think we're done. Thank you. Thank you. Mr. Hasid, anything further? I will endeavor to be very, very brief. The first point with respect to my colleague's comments about Byrd, the court there did not invite circuit courts or anyone else to find subterfuge could eliminate the expectation of privacy. It said that was an argument the government made in that case, but the factual record was underdeveloped, and as a result, they remanded. That would be perfectly acceptable here. Of course, we think the right decision is reversal outright and suppression of the evidence, but given the factual record and all of the holes that Your Honors have identified, certainly remand would help to close some of those gaps. As to questions you had asked before, it may make a difference that there is no proven violation of Georgia law in this case, and certainly no right for the landlord to evict Mr. Thomas because Mr. Thomas had the right to exclude all others from the apartment by virtue of his lease, and the landlord would have needed to prove fraud or some other thing to void the lease and get him out. I think subject to other questions the court had, and I don't want to overstay my welcome, but those were the couple of points I wanted to get up and respond to. Okay, I think we are done. And Mr. Hasid, the court appreciates your willingness to accept the appointment in this case, you and your law firm, and the assistance you've been to the court as well as to your client. The case is taken under advisement.